THE UNITED NEW JERSEY RAILROAD AND CANAL COMPANY

v.

THE LONG DOCK COMPANY et al.

Pending a suit in partition, the defendant, the Long Dock Company, which was one of the tenants in common, gave a mortgage on its interest in the premises, which were afterwards sold at the partition sale and conveyed to trustees for the benefit of all the original owners. The trustees subsequently sold and conveyed part of the property. Afterwards an agreement for a division of the rest was made between the Long Dock Company and the New Jersey Railroad and Transportation Company, which had acquired all the interest of the other owners. By that agreement it was stipulated that the costs of perfecting or protecting the title to any part of the premises should be borne by the parties in proportion to their respective interests, and that such proportion should be secured by a lien upon the property allotted in the division to the party by whom the same ought to be paid. Afterwards expense was incurred by complainant (which had succeeded to and acquired the rights of the New Jersey Railroad and Transportation Company) in extinguishing a superior title to part of its allotment.—*Held*, that the lien of such expense on defendant's portion was superior to that of the mortgage.

On bill for relief. On exceptions to master's report.

*Messrs. Cortland & R. Wayne Parker*, for the exceptions.

*Mr. J. B. Vredenburgh* and *Mr. J. D. Bedle*, contra.

THE CHANCELLOR.

By the decree in this cause it was decreed (*11 Stew. Eq. 142*) that the Long Dock Company should bear its proportion (with interest) of a certain payment of $500,000 made by the complainants to extinguish the outstanding title of the state in certain lands assigned and conveyed to the New Jersey Railroad and Transportation Company, under a certain agreement made between the last-named company and the Long Dock Company, in a partition of lands by and between them ; that the sum so to

be paid was to be in proportion to the interest of the Long Dock Company in the whole property, and was, therefore, one hundred and fifty-eight six-hundredths thereof; that the Long Dock Company should, under the before-mentioned agreement, pay to the complainants the like proportion of the costs of the defence of the latter in a suit brought in the circuit court of the United States by Garret E. Winants against them, with interest from the time of the payment of those costs; that the Long Dock Company should also pay the costs of this suit; and that the complainants were entitled, under that agreement, to a lien for those moneys upon the lands conveyed under the agreement to the Long Dock Company. It was referred to a master to ascertain and report the amount of those moneys, and also what equities, if any, the other defendants in this suit have in the last-mentioned property, or any part thereof, superior to those of the complainants, as adjudged by that decree; and if any such equities exist, to ascertain and report the owner, amount and order thereof. The master reported that the proportion of the money expended to extinguish the state's title, to be paid to the complainants by the Long Dock Company was, with the interest thereon, $286,037.71, and that the amount due the complainants for the Long Dock Company's proportion of the costs of the defence of the Winants suit was $131.66, and that the complainants are entitled to interest thereon from November 1st, 1870, and that none of the other defendants have any lien superior to that of the complainants under the agreement. Exceptions were filed by Fisher Ames Baker and William D. Shipman, trustees for the holders of mortgage bonds of the Long Dock Company, under a mortgage given by that company in 1863, and exceptions were filed by other defendants also. The questions discussed and submitted upon the hearing of the exceptions were as to whether the complainants' lien under the agreement is superior to the lien of the mortgage held by Baker and Shipman, trustees, and whether the complainants are entitled to interest upon the money reported to be due to them in respect of the costs of defence of the Winants suit from the time of payment of such costs by the complainants, or only from the time of demand by

them upon the Long Dock Company of payment of that company's proportion thereof; which demand, it is alleged, was not made earlier than one year before the commencement of this suit.

The above-mentioned mortgage of 1863 (it is dated May 25th, 1863) was given by the Long Dock Company pending proceedings in this court for partition of the property known as Harsimus cove. Those proceedings were begun August 15th, 1857, and the Long Dock Company was a party thereto. There was a decree for sale of the property, made September 21st, 1862, under which it was sold, and it was purchased by Peter Bentley and Moses Taylor, as trustees, in trust, for the beneficial owners of the property, and the premises were conveyed to them accordingly by deed dated August 24th, 1863.

The trustees conveyed away part of the property before the 10th of September, 1867, the date of the before-mentioned agreement, and, at that date, by that agreement, which was made by and between the trustees, the parties who were beneficially interested as owners in the property at the time of the partition sale, and the New Jersey Railroad and Transportation Company, which company appears to have acquired all the interests of those owners, except the Long Dock Company, it was agreed that the remaining property should be divided in a specified way between the New Jersey Railroad and Transportation Company and the Long Dock Company, and should be conveyed to them accordingly. Conveyances were made in pursuance of the agreement by deeds dated October 1st, 1867.

By the agreement it was declared that the title of the whole tract divided between the two companies should, for the sake of convenience of division, be deemed equally good and valid, and that if, at any time afterwards, either of the companies should be dispossessed of any portion of the tract conveyed to it or its assigns by virtue of the agreement, or should be put to any cost or expense in defending its title thereto, or in extinguishing any outstanding title or claim against such portion, the other company should bear its proportion of such loss and expense according to its proportion of interest in the entire property, which proportion of loss and expense should be a lien upon the part set off and

conveyed to it.   As already stated, the money which has been declared to be a lien upon the property set off and conveyed to the Long Dock Company was paid to extinguish the outstanding title of the state to land set off and conveyed under the agreement to the New Jersey Railroad and Transportation Company, and to defend its title to part of that property against the claim of Garret E. Winants.

The lien of the complainants is superior to the mortgage of 1863.   That mortgage, as already appears, was taken pending the proceedings in partition.   When the property was sold under the decree in that suit, and bought in by the trustees, the legal title of the mortgagor was extinguished, and the mortgage attached (but in equity only) to the interest of the mortgagor in the property, which interest was then merely equitable.   In the division under the agreement all the land alloted and conveyed was, for convenience of partition, regarded as being held by good title, and an equitable provision was made by mutual arrangement to secure the parties against loss by reason of such assumption. Without such arrangement, of course, the partition which was made would not have been made.   In that partition the Long Dock Company obtained its share in property of good title, while, on the other hand, the other party received its share in land, with a title so defective that it required a large expenditure of money to perfect it.   The Long Dock Company, therefore, but for the provisions of the agreement, would have had by so much the advantage of the railroad company in the partition.   In order to prevent such injustice on either side, and to protect each party in the premises, it was necessary, in such a partition, to make the arrangement which was made in the agreement in that behalf, or some such provision.   The proceedings in partition were conducted in good faith, and the agreement also was made and carried out in good faith.   Under the circumstances, the interest of the Long Dock Company, to which, in equity, the lien of the mortgage of 1863 attached itself, was the land obtained in the partition under the agreement subject to the lien for the payment to perfect the title of the land assigned and conveyed to the railroad company.

In *Westervelt* v. *Haff, 2 Sandf. Ch. 98,* where a mortgage was executed by a tenant in common upon his interest in land, pending suit for partition of the premises, and he became the purchaser of part of the property at the sale, and the amount of his share of the proceeds was allowed to him upon his bid, it was held that although if a stranger had bought the property the lien of the mortgage would have been cut off, yet since the mortgagor had bought it the lien still subsisted in equity upon the land so purchased, but only to the extent of the mortgagor's interest in the proceeds of the sale of the whole of the lands held in common and sold under the decree. The liens of mortgages given upon the property by the purchaser to other tenants in common, for their shares of the proceeds of the sale, were held to be, of course, prior to the lien of that mortgage. A voluntary partition of land between the owners thereof is not binding upon the holders of existing liens upon the property, unless they consent thereto. *Emson* v. *Polhemus, 1 Stew. Eq. 439.* But in the case under consideration, the lien of the mortgage of 1863 was extinguished (except in equity) by the sale under the decree in partition. The lien being a creature of equity, it will not be so maintained as to effect any injustice. It should not be maintained beyond the extent of the mortgagor's interest in the property; that is, it should be held to be subject to the lien in favor of the complainants. The mortgagor acquired the property under the agreement, and took it subject to that lien. The lien is, in effect, a lien for purchase-money, and is paramount to the mortgage. The obvious principle upon which, in *United States* v. *New Orleans R. R. Co., 12 Wall. 362 ; Williamson* v. *New Jersey Southern R. R. Co., 1 Stew. Eq. 277,* and *Coe* v. *New Jersey Midland R. R. Co., 4 Stew. Eq. 105,* and other like cases, it has been held that a mortgage upon after-acquired property attaches to such property, subject to existing equitable liens thereon, although it is prior in point of time to them, is applicable here. To give to the mortgage of 1863 the benefit of the allotment and conveyance to the Long Dock Company, free from the lien under the agreement, would give to the mortgagees an advantage by increasing their security at the expense of the

complainants. The principle of the maxim, *Nemo debet locuple-tari ex alterius incommodo*, is evidently applicable.

There is another consideration not without weight in this matter, viz., the fact that the agreement was made and acted upon twenty years ago, and that upon the faith of it the complainants expended the large sum of money, to secure the payment of which to them this suit was brought. In all the twenty years the mortgagees have accepted and have had the benefit of the arrangement. Had the claim for compensation been upon the side of the Long Dock Company, those mortgagees would have been entitled to and could have claimed the benefit of it and of the lien given by the agreement.

In order to dispose of the exception based upon the allowance of interest upon the proportion of the costs of the defence in the Winants suit, which, under the agreement, the Long Dock Company was bound to pay, the exceptants insisting that it should not have been allowed from any period earlier than the time of demanding payment of such proportion from the Long Dock Company, it is enough to say that the master followed the plain and explicit direction of the decree. The exceptions will be overruled, with costs.